*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 4, 2021

Plaintiff-Appellee,

v

No. 347907
Ingham Circuit Court
LC No. 18-000384-FC

TREAVION LAWRENCE-KENYATTA PERSON,

Defendant-Appellant.

Before: MARKEY, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of first-degree home invasion, MCL 750.110a(2); larceny of a firearm, MCL 750.357b; unlawful driving away of an automobile (UDAA), MCL 750.413; armed robbery, MCL 750.529; two counts of felon in possession of a firearm (felon-in-possession), MCL 750.224f; and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 22 to 48 years for his armed robbery conviction, 200 to 360 months for his first-degree home invasion conviction, 36 to 90 months for his larceny of a firearm conviction, 47 to 90 months for his UDAA conviction, and 36 to 90 months for each of his felon-in-possession convictions. Defendant also received the statutory two-year prison term for each of his felony-firearm convictions, to be served prior to the sentences for their predicate felonies. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On October 14, 2017, defendant and two other men, all masked and armed with guns, broke into the home of the victim, Carnesha Flowers (Flowers), where she lived with her children. Flowers awoke with a gun pointed toward her face and her children around her bed, crying. The men forced Flowers at gunpoint to open her safe, which contained cash and her handgun, which were then taken by the intruders. The men also took televisions, jewelry, clothing, shoes, and Flowers's Chevy Tahoe. While in the house, one of the men, whom Flowers later identified as defendant, regularly removed his mask to speak. After the men left in Flowers's Tahoe, she called

-1-

the police. Flowers told police that she could not identify the men, although she could recall defendant's face, who was then referred to as Suspect 2.

Three days later, Jamar Brown (Brown), the boyfriend of defendant's mother, called the police to report that his handgun had been stolen. Brown suspected that defendant had taken the gun and described defendant's clothing. The next day, October 18, 2017, Officer John David Lomakoski spoke briefly with defendant at his apartment, and then surveilled the residence while waiting for backup. Shortly thereafter, defendant left his apartment, wearing the exact clothing described by Brown, along with a red backpack, and crossed Saginaw Street. Officer Lomakoski reported to other officers via his radio that he had seen defendant cross the street against the signal, which caused the vehicles traveling the road to brake to avoid hitting him. Officer Lomakoski described defendant's actions as jaywalking. Michigan State Police Trooper Frederick Gibbs took the report, turned his patrol car around, drove directly up to defendant on the sidewalk, turned on the patrol car's emergency lights, exited the vehicle, announced that he was a police officer, and told defendant to stop; instead, defendant ran. Trooper Gibbs gave chase, saw defendant try to discard his backpack, and tackled him. Defendant was arrested for resisting or obstructing a police officer. His backpack was searched incident to arrest and two guns were found, one belonging to Brown and one belonging to Flowers.

Defendant was charged in Case No. 17-000957-FH ("the Brown case") for the crimes arising out of his possession and theft of Brown's gun and his resisting or obstructing arrest. While defendant was in jail awaiting trial on those charges, Flowers participated in a photographic lineup with Lansing Police Detective Ellen Larson. Flowers identified defendant, stating that he looked like the person who had kept removing his mask. Subsequently, in the Brown case, defendant moved the trial court to suppress evidence of the guns found in his backpack, on the basis of an alleged unconstitutional search and seizure. The trial court denied the motion, determining that the arrest was lawful, which rendered the search incident to arrest constitutional.[1]

While the Brown case was pending, Flowers received a letter from Jermaine Blue (Blue), a federal inmate, who had spent time in jail with defendant in late 2017. Blue, who knew Flowers, stated that defendant had bragged while in jail about breaking into Flowers's home and robbing her. Flowers, having learned defendant's name from Blue, found defendant on Facebook and verified her belief that defendant was the person who had removed his mask during the home invasion. Blue testified at trial that defendant had admitted to home invasion and robbery.

In March 2018, defendant was charged in the present case. After a preliminary examination, during which Flowers identified defendant again, defendant was bound over on all of the charges of which he was eventually convicted (except for armed robbery, which had not yet been charged). Once in the circuit court, the prosecution moved to join the Brown case and the present case for trial. The trial court granted the motion over defendant's objection, and held,

---

[1] This Court denied defendant's application for leave to file an interlocutory appeal from this decision in the Brown case. *People v Person*, unpublished order of the Court of Appeals, entered September 12, 2018 (Docket No. 344718).

alternatively, that evidence from the Brown case relevant to the present case would be admissible even if the cases were not joined.

During the pretrial proceedings, defendant moved the trial court to suppress Flower's identification, both pretrial and during trial, arguing that the photographic lineup was unduly suggestive and that an independent basis for the identification was lacking. The trial court denied the motion. The prosecution then moved for leave to amend the felony information to add a charge of armed robbery, which the trial court granted over defendant's objections.

Shortly before trial was to commence in January 2019, the prosecution disclosed evidence to the defense that a federal court in an unrelated case, *United States v Demyers*, opinion of the United States District Court for the Western District of Michigan, issued June 6, 2017 (Case No. 1:17:CR:61), had discounted Officer Lomakoski's testimony, finding that Officer Lomakoski did not have a reasonable suspicion to search the defendant in that case, and had granted the defendant's motion to suppress. Defendant then renewed his motion to suppress evidence of the guns found in his backpack, arguing that Officer Lomakoski had likely lied about seeing defendant cross against the signal and impede traffic. After reviewing Officer Lomakoski's preliminary examination testimony from the Brown case, watching Trooper Gibbs's patrol car dashcam video, considering the federal court decision, and hearing the parties' arguments, the trial court again denied the motion.

On the first day of trial, the trial court ordered the Brown case and the present case severed. Defendant was then tried on and convicted of the charges as already noted. During the sentencing hearing, the trial court noted that it had granted the prosecution's motion to enter a *nolle prosequi* regarding the charges in the Brown case. Defendant was sentenced as described. This appeal followed.

During the pendency of this appeal, this Court denied two motions by defendant for a remand to the trial court to hold an evidentiary hearing regarding the various issues defendant had raised on appeal. *People v Person*, unpublished order of the Court of Appeals, entered December 29, 2020 (Docket No. 347907); *People v Person*, unpublished order of the Court of Appeals, entered August 3, 2021 (Docket No. 347907). These motions were denied "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar."

## II. MOTION TO SUPPRESS

Defendant argues that the trial court should have granted his motion to suppress evidence of the guns found in his backpack because the search and seizure were unconstitutional. Alternatively, defendant argues that the trial court abused its discretion by denying his request for an evidentiary hearing. We disagree.

We review for clear error a trial court's factual findings on a motion to suppress. *People v Hrlic*, 277 Mich App 260, 262-263; 744 NW2d 221 (2007). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016). We review de novo the trial court's ultimate ruling on the motion to suppress. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).

We review for an abuse of discretion a trial court's decision to grant or deny a request for an evidentiary hearing. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 217.

"Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, ___ Mich ___, ___; ___ NW2d ___ (2021) (Docket No. 159981); slip op at 4, citing US Const, Am IV; Const 1963, art 1, § 11. "The lawfulness of a search or seizure depends on its reasonableness." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020) (quotation marks and citation omitted). "In general, a 'seizure' occurs for Fourth Amendment purposes when a reasonable person would have believed that he or she was not free to leave." *People v Anthony*, 327 Mich App 24, 33; 932 NW2d 202 (2019), citing *United States v Mendenhall*, 446 US 544, 554; 100 S Ct 1870; 64 L Ed 2d 497 (1980). "A search occurs under the Fourth Amendment when 'the government violates a subjective expectation of privacy that society recognizes as reasonable.' " *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op at 9, quoting *Kyllo v United States*, 533 US 27, 31-33, 121 S Ct 2038; 150 L Ed 2d 94 (2001). "Ordinarily, searches or seizures conducted without a warrant are unreasonable per se, and when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial." *People Woodard*, 321 Mich App 377, 383; 909 NW2d 299 (2017) (quotation marks and citation omitted). However, "several exceptions exist such that a warrant is not always required." *Anthony*, 327 Mich App at 34.

It is undisputed in the present case that when Trooper Gibbs drove up to defendant, turned on the emergency lights of his patrol car, exited the vehicle in his full police uniform, and commanded defendant to stop, a seizure for purposes of the Fourth Amendment occurred. *Anthony*, 327 Mich App at 33. Moreover, the parties do not dispute that the police conducted a search when they unzipped defendant's backpack and found two handguns. *Abcumby-Blair*, ___ Mich App at ___; slip op at 9. It is undisputed the police did not have a warrant to stop or search defendant, and the search and seizure in question were therefore presumptively unreasonable. *Woodward*, 321 Mich App at 383. The question then becomes whether the seizure and subsequent search were reasonable under an exception to the warrant requirement of the Fourth Amendment.

We agree with the trial court that, under the circumstances, Trooper Gibbs's seizure of defendant without a warrant was reasonable as an investigatory stop. "In determining reasonableness, the court must consider whether the facts known to the officer at the time of the stop would warrant an officer of reasonable precaution to suspect criminal activity." *People v Mazzie*, 326 Mich App 279, 292; 926 NW2d 359 (2018) (quotation marks and citation omitted). An investigatory stop, like a traffic stop, "is justified if the officer has an articulable and reasonable suspicion that" an individual "is subject to seizure for . . . a violation of a traffic law." *Id*. (quotation marks and citation omitted). " 'Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances.' " *Id*., quoting *People v Kavanaugh*, 320 Mich App 293, 301; 907 NW2d 845 (2017).

Trooper Gibbs made the stop of defendant on the basis of information provided to him by Officer Lomakoski. According to Officer Lomakoski, he saw defendant cross Saginaw Street

against the signal, which caused some automobiles traveling on the road to brake to avoid hitting defendant. Officer Lomakoski described defendant's behavior as a civil infraction called jaywalking. While Officer Lomakoski used the common parlance of "jaywalking" to describe defendant's alleged infraction, the prosecution argued before the trial court that Officer Lomakoski actually witnessed a violation of MCL 257.676b(1), which states in relevant part, "a person, without authority, shall not block, obstruct, impede, or otherwise interfere with the normal flow of vehicular . . . traffic upon a public street or highway in this state, . . . with his or her person." A violator of this statute "is responsible for a civil infraction." MCL 257.676b(4). Additionally, MCL 257.613 requires that pedestrians crossing a road with "special pedestrian control signals" such as a walk/don't walk sign to obey those signals when crossing or be responsible for a civil infraction. See MCL 257.613(2), (3).

A review of Trooper Gibbs's dashcam video, as he drove toward Saginaw Street, shows that the intersection in question had "special pedestrian control signals," MCL 257.613(2). During the approach, the "don't walk" signal is showing, although defendant had already crossed Saginaw Street at the time. According to Officer Lomakoski's testimony at the preliminary examination in the Brown case, which the trial court considered when deciding defendant's motion to suppress, the "don't walk" signal was showing when defendant started crossing the street, which caused oncoming traffic on Saginaw Street to brake to avoid hitting defendant. Specifically, Officer Lomakoski testified that he watched as defendant "walked northbound on the sidewalk on the west-side of the road, at which point, he crossed Saginaw against the red light. So, traffic had the green light eastbound, and they had to almost come to a complete stop to avoid hitting [defendant]."

Defendant argued before the trial court, and argues on appeal, that the trial court was wrong to accept Officer Lomakoski's testimony as truthful. Defendant notes that Officer Lomakoski's bodycam was covered at the time of the alleged incident, and that no other officers in the area saw defendant cross Saginaw Street against the "don't walk" signal. Further, Trooper Gibbs's dashcam video did not show the actual event, and defendant posits that the signal changed while Trooper Gibbs was in the process of turning around, after defendant had already completed his crossing. Defendant also argues, as he did before the trial court, that Officer Lomakoski's testimony was recently found not credible by a federal district court judge in a case involving a warrantless search of a young black man.

The trial court considered defendant's argument concerning Officer Lomakoski's credibility, and accepted the federal judge's conclusion that Officer Lomakoski had not been credible in the federal case. However, upon reviewing Officer Lomakoski's testimony at the preliminary examination, watching the dashcam video, and considering the federal judge's findings, the trial court determined that Officer Lomakoski's testimony was credible in the present case. The trial court found that the dashcam video, which showed defendant only just having crossed the street and the "don't walk" signal being illuminated, allowed for an inference that the signal was still illuminated when defendant crossed Saginaw Street.

On appeal, defendant urges this Court to disagree with the trial court's factual findings. However, as stated, our review of the trial court's factual findings is "for clear error," *Hrlic*, 277 Mich App at 262-263, which requires us to be "left with a definite and firm conviction that a mistake was made," *Blevins*, 314 Mich App at 348-349. Although it is possible to draw the

inference that defendant suggests from the evidence in the record, we are not left with such a conviction here. *Id.* Because the trial court's factual findings were not clearly erroneous, we accept as true that Officer Lomakoski saw defendant cross Saginaw Street against the signal and cause traffic to brake to avoid him. *Hrlic*, 277 Mich App at 262-263.

In crossing Saginaw Street when the "don't walk" signal was illuminated, and causing traffic to slow and nearly stop by having his body in the middle of the street, the police had "an articulable and reasonable suspicion that" defendant was in "violation of a traffic law," *Mazzie*, 326 Mich App at 292 (quotation marks and citations omitted), specifically a violation of either MCL 257.676b(1) or MCL 257.613(2)(b). Consequently, Trooper Gibbs's seizure of defendant by turning on his emergency lights and commanding him to stop was reasonable and therefore constitutional. *Mazzie*, 326 Mich App at 293.

Having concluded that the initial stop of defendant was lawful, we must next determine whether defendant's arrest and the subsequent search of his backpack were constitutional. Searches under the Fourth Amendment generally require a warrant. *Woodard*, 321 Mich App at 383. However, as with seizures, there are exceptions to the warrant requirement for searches. *People v Hughes*, 506 Mich 512, 524-525; 958 NW2d 98 (2020) ("[A] a search warrant is not always required before searching or seizing a citizen's personal effects."). "One of the narrow, specific exceptions to the warrant requirement is searches incident to arrest." *People v Eaton*, 241 Mich App 459, 461-462; 617 NW2d 363 (2000). "There are two historical rationales for the 'search incident to arrest' exception: '(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial.' " *People v Nguyen*, 305 Mich App 740, 756; 854 NW2d 223 (2014), quoting *Knowles v Iowa*, 525 US 113, 116; 119 S Ct 484; 142 L Ed 2d 492 (1998). "Fundamental to the search incident to arrest exception is the requirement that there must be a lawful arrest in order to establish the authority to search." *Eaton*, 241 Mich App at 463.

"A custodial arrest based on probable cause is not an unreasonable intrusion under the Fourth Amendment." *Nguyen*, 305 Mich App at 751. In other words, "an arrest is lawful" if it is "based on probable cause . . . ." *People v Maggit*, 319 Mich App 675, 682; 903 NW2d 868 (2017). "An arresting officer, or collectively the officers involved in an investigation ('the police team' approach), must possess information demonstrating probable cause to believe that an offense has occurred and that the defendant has committed it." *Nguyen*, 305 Mich App at 751. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Maggit*, 319 Mich App at 682, quoting *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). "In reviewing a claim that the police lacked probable cause to arrest, this Court must determine whether facts available . . . at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony." *Nguyen*, 305 Mich App at 751-752 (quotation marks and citation omitted; alteration in original). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *Id.* at 752 (quotation marks and citation omitted).

Defendant argues that the search of his backpack was unconstitutional because crossing a street against the signal and impeding traffic are not arrestable offenses. However, neither the

police officers nor the prosecution have contended that defendant was arrested for committing those civil infractions. Instead, the police and the prosecution maintain that defendant was arrested for resisting or obstructing a police officer when he ran away from Trooper Gibbs despite a lawful command to stop in violation of MCL 750.81d(1). We agree.

The elements of the crime of resisting or obstructing a police officer are "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). "[T]he Legislature [has[] defined the term 'obstruct' to mean 'the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.' " *People v Morris*, 314 Mich App 399, 408-409; 886 NW2d 910 (2016), quoting MCL 750.81d(7)(a).

As stated, Trooper Gibbs had lawful grounds to seize defendant on the basis of Officer Lomakoski's report that defendant had committed civil infractions of certain traffic laws. Therefore, when Trooper Gibbs got out of his police car, in full police uniform, and told defendant to "stop," Trooper Gibbs was giving a "lawful command." *Id*. Further, considering Trooper Gibbs's appearance—wearing police uniform and arriving in a police car—defendant had reason to know that Trooper Gibbs "was a police officer performing his or her duties." *Corr*, 287 Mich App at 503. Indeed, Trooper Gibbs testified that he announced that he was a state police officer while commanding defendant to stop. Therefore, by running away instead of stopping, defendant obstructed Trooper Gibbs by engaging in" 'a knowing failure to comply with a lawful command.' " *Morris*, 314 Mich App at 408-409, quoting MCL 750.81d(7)(a).

Trooper Gibbs observed defendant ignore his command firsthand. Considering Trooper Gibbs's direct observation of those events, the "facts available . . . at the moment of arrest" in this case "justif[ied] a fair-minded person of average intelligence in believing that [defendant] had committed a felony." *Nguyen*, 305 Mich App at 751-752 (quotation marks and citation omitted; alteration in original). In other words, Trooper Gibbs had probable cause to believe that defendant committed the felony of resisting or obstructing a police officer. *Morris*, 314 Mich App at 408-409; MCL 750.81d. Because Trooper Gibbs had probable cause to believe that defendant had committed a felony, his arrest of defendant was lawful and constitutional. *Maggit*, 319 Mich App at 682. And the subsequent search of defendant's backpack, incident to arrest, was also constitutional. *Eaton*, 241 Mich App at 463 ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search . . . ."). The trial court did not err by denying defendant's motion to suppress.

Notwithstanding the above, defendant also argues that the trial court erred by denying his request for an evidentiary hearing regarding his renewed motion to suppress. We disagree.

Generally, a trial court is required to hold an evidentiary hearing regarding a motion to suppress evidence on the basis of an alleged unconstitutional search and seizure. *People v Kaufman*, 457 Mich 266, 273-274; 577 NW2d 466 (1998). There are exceptions, however, such as when counsel "agree to have a motion to suppress decided on the basis of the record of the

-7-

preliminary examination." *Id*. at 276.  Under MCR 6.110(D)(2)(a), trial courts are specifically permitted to consider a motion to suppress on the basis of testimony elicited during a preliminary examination.  See *Kaufman*, 457 Mich at 275-276 (stating that "we take this occasion to observe the court rule's specific statement that a ruling on a motion to exclude evidence may be premised on the record of a prior evidentiary hearing," which included "the preliminary examination transcript").  While the Court in *Kaufman* focused on stipulations among the parties, this Court has stated that an evidentiary hearing is not required, even when a party requests one, where the moving party "does not indicate how or why that fact [to be elicited at an evidentiary hearing] would advance his position, nor does he point to any area in which further elucidation of the facts might advance his position." *People v McMillan*, 213 Mich App 134, 142; 539 NW2d 553 (1995), citing *People v Futrell*, 125 Mich App 568, 572; 336 NW2d 834 (1983).

Defendant argues that an evidentiary hearing was required to explore factual disputes related to Officer Lomakoski's credibility, where the backpack was when defendant was arrested, who searched the backpack, and the actual reason for defendant's arrest.  But it is unclear how "further elucidation of the facts" regarding the last three purported factual disputes "might advance his position." *McMillan*, 213 Mich App at 142.  Indeed, defendant does not suggest how the location of his backpack at the time of arrest,[2] which officer searched the backpack, and the "actual" reason for defendant's arrest would change the outcome of the trial court's decision.[3]  It is enough, as discussed above, that defendant's backpack was searched by a police officer incident to his lawful arrest for resisting or obstructing a police officer. *Eaton*, 241 Mich App at 463.

Regarding Officer Lomakoski's testimony and his credibility, defendant has not shown how *further* elucidation of facts related to Officer Lomakoski's credibility would have been achieved during an evidentiary hearing.  When the trial court made its decision, it referred to its review of the preliminary examination testimony in the Brown case.  During the preliminary examination, defendant cross-examined Officer Lomakoski regarding defendant's alleged jaywalking.  Defendant asked whether it was common to stop someone for the alleged civil infraction, why Officer Lomakoski did not just question defendant when he answered the door to his apartment, and for what reason defendant actually was arrested.  On direct examination, when Officer Lomakoski stated that defendant had jaywalked and then fled from police, defendant interrupted and stated that Officer Lomakoski was lying.  Defendant also cross-examined Trooper Gibbs on the topic, asking how often he stopped people for jaywalking.  Defendant then asked if

---

[2] The backpack was either thrown off of defendant's body as he ran, or still on his back when he was tackled by Trooper Gibbs.  In either instance, the backpack was constitutionally searchable without a warrant.  See *Eaton*, 241 Mich App at 463 ("When conducting a search incident to a lawful arrest, the police may search the arrestee and the area within his immediate control."); see also *People v Taylor*, 253 Mich App 399, 406; 655 NW2d 291 (2002) ("A person can abandon property and thus entirely deprive himself of the ability to contest a search and seizure of that property.")

[3] See *Moorman*, 331 Mich App at 489 n 2 (holding that because "the Fourth Amendment creates an objective, not subjective, standard," even though an "officer's subjective reason for making the arrest was incorrect, the arrest was lawful given that the facts known to the officer at the time of arrest gave rise to probable cause to believe that the suspect had committed" a crime).

Trooper Gibbs often arrested people for other crimes after stopping them for jaywalking, implying that jaywalking might have been an excuse to stop defendant for something else.

In addition to the preliminary examination testimony, the trial court also watched and analyzed Trooper Gibbs's dashcam video. Using inferences arising from the video, the trial court concluded it was likely that defendant had just crossed Saginaw Street against the signal before coming into focus on Trooper Gibbs's dashcam. And the trial court specifically stated that it had considered the federal judge's finding that Officer Lomakoski's testimony lacked credibility in a separate case. Defendant does not explain how an evidentiary hearing would have led to additional evidence supporting his claim of suppression. The trial court had already considered the documentary and video evidence that defendant contends supports his claim. Further, the trial court also considered defendant's cross-examination of Officer Lomakoski and Trooper Gibbs. Considering defendant's failure to identify what additional testimony might come from the evidentiary hearing and how it would support his claim, defendant's argument on appeal regarding the evidentiary hearing is unpersuasive. *McMillan*, 213 Mich App at 142, citing *Futrell*, 125 Mich App at 572. The trial court's decision to deny the request for an evidentiary hearing was not an abuse of discretion. *Unger*, 278 Mich App at 216-217.

### III. CROSS-EXAMINATION OF OFFICER LOMAKOSKI

Defendant also argues that trial court abused its discretion by limiting his ability to cross-examine Officer Lomakoski regarding the facts of the federal case. Alternatively, defendant asserts that his trial counsel was ineffective for failing to argue bias as a reason to question Officer Lomakoski about the federal case. We disagree in each respect.

"In order to preserve the issue of the improper admission of evidence for appeal, a party generally must object at the time of admission." *People v Brown*, 326 Mich App 185, 191; 926 NW2d 879 (2018) (quotation marks and citation omitted). Before Officer Lomakoski was called as a witness, defendant moved the trial court for permission to cross-examine Officer Lomakoski regarding the federal judge's determination that he had provided untruthful statements to establish probable cause to search someone. Defendant argued that the evidence was admissible under the rules of evidence, but did not argue any constitutional grounds in support of his claim. Therefore, defendant's evidentiary arguments are preserved for review, *id.*, but his constitutional arguments, which were not raised at trial, are unpreserved. See *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

Because a *Ginther*[4] hearing was not held regarding defense counsel's effectiveness, our review of that issue is limited to errors apparent on the record. *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016); *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015).

"When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(2014). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012). "[W]hen such preliminary questions of law are at issue, it must be borne in mind that it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

Generally, "[w]hether a defendant's right to present a defense was violated by the exclusion of evidence is a constitutional question that this Court reviews de novo." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 537-538; 775 NW2d 857 (2009). Similarly, "[t]he constitutional question whether defendant was denied her constitutional right to confront the witnesses against her is reviewed de novo." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "Questions whether a defendant was denied a fair trial . . . are reviewed de novo." *People Steele*, 283 Mich App 472, 478; 769 NW2d 256 (2009). However, because these constitutional issues have not been preserved for review, we review the "unpreserved claim[s] for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (citation omitted).

"The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016), quoting *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008).

The trial court initially ruled that defendant would not be permitted to cross-examine Officer Lomakoski regarding the federal court's findings. During trial, however, defendant ultimately was permitted to ask Officer Lomakoski about the federal court's determination to discount his testimony:

> *Q*. . . . Has your truthfulness of probable cause been called into question in the past?
>
> *A*. Yes. I was in a suppression hearing before.
>
> *Q*. In fact, recently in the past year, you have been in a suppression hearing; is that correct?
>
> *A*. About year and a half ago.
>
> *Q*. About a year and a half ago? And at that time did a federal judge discount your testimony?

*A.* Yes.

*Q.* That was specifically in regards to finding probable cause to search another young black male; is that correct?

*A.* Yes.

*Q.* And, in fact, the evidence in that case was suppressed, correct?

*A.* Yes, it was.

*Q.* And as part of that case's ruling, did there come about excerpts from a conversation that you had with Officer Brooks?

*A.* Yes.

\* \* \*

*Q.* I will just [wrap] that up with does discounted mean untruthful?

*A.* Discounted? No, not necessarily. I do not—

*Q.* But that judge didn't believe you?

*A.* That judge gave more credence to the defense than the facts in the case.

*Q.* And the video from your body camera?

*A.* That was completely twisted around.

*Q.* Is that a yes or a no? He gave more credence to the body camera; is that correct?

*A.* He gave more credence to the defense and their testimony.

After the testimony concluded and the jury exited the courtroom, the trial court stated that it had decided to allow questioning about the federal decision during the course of Officer Lomakoski's cross-examination. However, the trial court ruled that it would not allow defendant "to go into the background and history" of the federal case.

Although defendant has framed this issue as implicating several of his constitutional rights, the relatively straight-forward issue is whether the trial court properly limited defendant's cross-examination of Officer Lomakoski. As to defendant's claim that he was denied the right to present a defense, "[t]here is no doubt that based on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *King*, 297 Mich App at 473 (quotation marks and citations omitted). However, even with the constitutional right to present a defense, "an accused must still comply with established rules of

-11-

procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 474 (quotation marks and citations omitted). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id*. (quotation marks and citations omitted).

As to defendant's claim regarding confrontation, "[t]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988) (quotation marks and citation omitted). Stated differently, "[t]he right of cross-examination is not without limit; neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-examine on any subject." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). The United States Supreme Court has "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Delaware v Van Arsdall*, 475 US 673, 678-679; 106 S Ct 1431; 89 L Ed 2d 674 (1986) (quotation marks and citation omitted). In other words, "[a] limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998).

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. [*Van Ardsall*, 475 US at 679.]

The question, then, is whether the trial court complied with the Michigan Rules of Evidence and court rules in limiting defendant's cross-examination of Officer Lomakoski, and whether that limitation was reasonable. We conclude that the trial court's limitation was within its authority and was reasonable under the circumstances. Under MRE 611(c), "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Otherwise explained, "cross-examination must focus on relevant evidence." *People v Evans*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 343544); slip op at 8, citing MRE 611(c). More pertinently, under MRE 608(b), "[s]pecific instances of the conduct of a witness . . . may, [] in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . ." As relevant to the present case, "MRE 608(b) provides that a witness may be questioned regarding prior specific instances of conduct on cross-examination, but only if the prior instances of conduct are probative of 'the witness' character for truthfulness or untruthfulness . . . .' " *People v Wilder*, 502 Mich 57, 63 n 7; 917 NW2d 276 (2018).

In *Demyers*, the federal case at issue here, the defendant was charged with possession with intent to distribute cocaine and possession of a gun. *Demyers*, unpub op at 1. The defendant moved to suppress evidence of a gun and cocaine found after a traffic stop by Officer Lomakoski

and Officer Mollie Brooks. *Id.* at 2-3. Officers Lomakoski and Brooks stated that they had pulled the defendant's vehicle over because they saw the defendant making "furtive" gestures. *Id.* at 3. "Specifically, they alleged that [the defendant] reached one hand into the back seat and one hand into the center console." *Id.* After considering all of the evidence, including the officers' conversation during the search, which was recorded on bodycams, the federal court decided to "discount" Officer Lomakoski's testimony. *Id.* at 3-4. In light of the federal court's decision to disbelieve Officer Lomakoski's testimony, the federal court ruled that the police did not have reasonable suspicion to conduct an investigatory stop. *Id.* at 6-7. In a footnote, the federal court specifically stated, "the Court does not believe the officers' testimony regarding [the defendant's] alleged furtive movements." *Id.* at 7 n 2.

Although the trial court indicated that it would limit defendant's cross-examination regarding *Demyers*, the transcript shows that defendant's exploration of the facts of that case was relatively thorough. Defendant was permitted to elicit testimony from Officer Lomakoski that his testimony in a similar case had been discounted by a federal court. Further, the discounted testimony occurred in a case involving a young black male, like defendant. Defendant argues, however, that he was prevented by the trial court from inquiring into three areas: (1) Officer Lomakoski's bias against black men, (2) the federal court's reliance on Officer Lomakoski's bodycam footage to discount his testimony; and (3) Officer Lomakoski's relationship with Officer Brooks.

As to the first area, "[b]ias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *People v Layher*, 464 Mich 756, 763; 631 NW2d 281 (2001), quoting *United States v Abel*, 469 US 45, 52; 105 S Ct 465; 83 L Ed 2d 450 (1984). "Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." *Layher*, 464 Mich at 763 (internal quotation marks omitted). "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Id.* (internal quotation marks omitted).

Defendant contends that the federal court's ruling shows that Officer Lomakoski is biased against young black men. But the federal court's decision does not reference the defendant's race; although Officer Lomakoski did agree that the defendant in *Demyers* was black when asked by defense counsel. *Demyers* provides little support for defendant's claim of bias, other than the mere fact that the defendant was black. In any event, defendant was not prevented from raising the issue of Officer Lomakoski's alleged bias or relating defendant's situation to that of the defendant in *Demyers*, but was only limited from excessive exploration of "the background and history" of that case. Defendant does not identify what further information would have been gleaned from such cross-examination that would have strengthened his bias argument. Under the circumstances, the trial court did not abuse its discretion or impair any of defendant's constitutional rights in limiting cross-examination in that manner. *Van Ardsall*, 475 US at 679; *Hana*, 447 Mich at 350; *King*, 297 Mich App at 474; MRE 608(b); MRE 611(c).

Defendant also argues that he should have been able to ask about the federal court's reliance on Officer Lomakoski's bodycam footage. As is clear from the transcript, defendant was permitted to ask that question, and did so at least twice. Further, throughout cross-examination,

defendant asked several questions of Officer Lomakoski about why his bodycam did not show defendant jaywalking. Officer Lomakoski explained that his shirt was over his bodycam, which was attached to his body armor, so as to avoid being identified as a police officer, considering that he was surveilling defendant's residence in plain clothes and an unmarked car. Defendant does not explain what other questions defendant would have asked Officer Lomakoski. The trial court did not abuse its discretion or commit a plain error in violation of defendant's asserted constitutional rights. *Van Ardsall*, 475 US at 679; *Hana*, 447 Mich at 350; *King*, 297 Mich App at 474; MRE 608(b); MRE 611(c).

Lastly, defendant contends that he should have been permitted to inquire about Officer Lomakoski's relationship with Officer Brooks. Considering that Officer Brooks was not involved in the present case and did not testify at the preliminary examination or trial, it is clear that such cross-examination would have been irrelevant.

In sum, the trial court properly allowed defendant to cross-examine Officer Lomakoski about all relevant topics, including his character for truthfulness, as a result of the federal court's findings. To the extent the trial court did limit cross-examination, such a limitation was not an abuse of discretion or plain error affecting defendant's substantial rights. *Van Ardsall*, 475 US at 679; *Hana*, 447 Mich at 350; *King*, 297 Mich App at 474; MRE 608(b); MRE 611(c).

Defendant alternatively argues that his trial counsel was ineffective for failing to argue that the trial court's limitation would prevent counsel from fully exploring Officer Lomakoski's alleged bias. We disagree.

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *Schrauben*, 314 Mich App at 189-190, citing US Const, Am VI; Const 1963, art 1, § 20. "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich App at 190. The United States Supreme Court has held that "in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Jackson*, 313 Mich App at 431, quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

This Court will not find trial counsel to be ineffective where an objection would have been futile; nor will it second-guess matters of trial strategy. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). "The defendant 'bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also] necessarily bears the burden of establishing the factual predicate for his

-14-

claim.' " *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (alteration in *Cooper*).

As stated, the trial court permitted defense counsel to inquire into the outcome of *Demyers* and the federal court's findings regarding Officer Lomakoski's credibility, and to elicit that the defendant in *Demyers* was a young black man. Defendant has not explained what further evidence could have been gleaned from additional questioning of Officer Lomakoski regarding *Demyers*. Therefore, an argument to allow for further cross-examination on that topic would have lacked merit. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Savage*, 327 Mich App 604, 617; 935 NW2d 69 (2019) (quotation marks and citation omitted).

## IV. *BRADY* VIOLATION

Defendant also argues that the prosecution violated *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to provide the defense with evidence of Blue's conviction of a crime involving dishonesty. Alternatively, defendant contends that his trial counsel was ineffective for failing to discover and use this evidence for impeachment. We disagree.

It is undisputed in this case that "[d]efendant failed to preserve his claim that the prosecution improperly suppressed evidence by moving in the trial court for a new trial or for relief from judgment." *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020). This Court generally reviews de novo issues involving alleged *Brady* violations. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016). However, because this issue has not been preserved for review, we must review the "unpreserved claim for plain error affecting defendant's substantial rights." *Roscoe*, 303 Mich App at 648.

"[T]he United States Supreme Court held . . . 'that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." ' " *Dimambro*, 318 Mich App at 212, quoting *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady*, 373 US at 87. "To establish a *Brady* violation, a defendant must show that '(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material.' " *Abcumby-Blair*, ___ Mich App at ___; slip op at 2, quoting *Chenault*, 495 Mich at 150.

The primary issue of contention in the present case is whether the prosecution should have known about the evidence and disclosed it. "The government is held responsible for evidence within its control, even evidence unknown to the prosecution . . . ." *Dimambro*, 318 Mich App at 213 (citation omitted). While "[t]he prosecution is not required to seek and find exculpatory evidence or assist in building or supporting a defendant's case," *People v Bosca*, 310 Mich App 1, 30; 871 NW2d 307 (2015) (quotation marks and citation omitted), "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," *Kyles v Whitley*, 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (1995). The important question, then, is whether the evidence in question was "known to the others acting on the government's behalf in the case . . . ." *Id*. If not, the prosecution did not have a duty to discover it and disclose it. *Bosca*, 310 Mich App at 30.

Here, defendant states the prosecution should have been aware of Blue's apparent conviction of a crime involving dishonesty. We disagree. Our review of the record shows that the prosecution did not commit a *Brady* violation, because it did not have possession of the allegedly exculpatory evidence, and knowledge of federal documents could not be imputed to the prosecution. In support of his argument, defendant cites to a document purporting to be a "Judgment in a Criminal Case" from the Western District of Michigan, signed by a federal district judge. The document lists Blue as the defendant, and states that Blue had violated the terms of his supervised release. Specifically, as related to this case, Blue was found to have "committed the offense of Making False Statements to a Federal Officer, in violation of 18 U.S.C. § 1001, a felony punishable by five years' imprisonment and/or a $250,000.00 fine."

Defendant argues that the prosecution should have discovered evidence of Blue's conviction and disclosed it to the defense. In other words, defendant never asserts that the prosecution actually *had* the above information to give the defense, but only that the knowledge should be imputed to the prosecution. However, the prosecution's responsibility to disclose evidence it does not know about is limited to evidence "known to the others acting on the government's behalf *in the case*, including the police." *Kyles*, 514 US at 437 (emphasis added); see also *United States v Pelullo*, 399 F3d 197, 216-218 (CA 3, 2005) (holding that evidence collected by civil investigators could not be imputed to the prosecution because the civil investigators played no role in the criminal case), and *United States v Morris*, 80 F3d 1151, 1169-1170 (CA 7, 1996) (holding that the prosecution had no duty to learn about information held by other agencies, such as the Office of Thrift Supervision, the Securities Exchange Commission, or Internal Revenue Service, because those agencies were not involved in the investigation or prosecution at issue).[5]

There is no indication on the record before this Court that the federal government or federal law enforcement officials, which were the only entities defendant alleges had knowledge of Blue's impeachable conduct, were working on the prosecution or law enforcement's behalf "in the case" involving defendant. *Kyles*, 514 US at 437. Considering the above-cited caselaw, we conclude that information held by the federal government and federal law enforcement could not be imputed to the prosecution in this case. Because there is no indication in the record that evidence of Blue's apparent conviction of a crime involving dishonesty was known to the prosecution or "others acting on the government's behalf *in the case*, including the police," *Kyles*, 514 US at 437 (emphasis added), defendant has failed to show the first element of a *Brady* violation: that the prosecution suppressed evidence, *Abcumby-Blair*, ___ Mich App at ___; slip op at 2. There was no plain error affecting defendant's substantial rights. *Chenault*, 495 Mich at 150.

Defendant alternatively argues his trial counsel should have discovered the impeachment evidence and used it at trial. We disagree. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v*

---

[5] Although decisions by federal lower courts are not binding on this Court, we may rely on them as persuasive authority. *People v Walker (On Remand)*, 328 Mich App 429, 444-445; 938 NW2d 31 (2019).

*Muhammad*, 326 Mich App 40, 66; 931 NW2d 20 (2018) (quotation marks and citation omitted). However, trial "[c]ounsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "The failure to reasonably investigate a case can constitute ineffective assistance of counsel," but only when it "undermines the confidence in the trial's outcome." *People v Anderson*, 322 Mich App 622, 630-631; 912 NW2d 607 (2018) (quotation marks and citation omitted).

As discussed, the evidence in question involved Blue's apparent conviction of a crime involving dishonesty—lying to a federal officer in violation of 18 USC 1001. The record does not reveal whether defendant's trial counsel ever discovered the conviction or decided not to use it during his cross-examination of Blue. Assuming, without deciding, that trial counsel's failure to either discover or use the evidence in question was objectively unreasonable, defendant still cannot demonstrate that his counsel's failure was outcome determinative.

During Blue's cross-examination, defendant's trial counsel significantly and effectively undermined Blue's credibility. The jury was made aware that Blue was a federal prisoner during his testimony. Additionally, trial counsel focused on the information included in Blue's letter to Flowers, hoping to convince the jury that Blue had obtained the facts of the home invasion from police records defendant had in jail with him, rather than via a confession from defendant. To do so, trial counsel engaged in an inventive strategy, beginning with asking Blue to repeat a set of numbers and letters. Trial counsel then asked Blue about defendant's confession, including what information defendant allegedly had provided to Blue. Blue testified defendant had confessed to very specific facts about his robbery of Flowers. Trial counsel, after a few minutes of questioning, then asked Blue to recite the set of letters and numbers he had provided at the beginning of cross-examination. When Blue was unable to do so, trial counsel asked about Blue's inclusion of Flowers's complete social security number, as well as the make and model of her gun, in his letter to her. Blue attempted to explain his inability to memorize the numbers provided by trial counsel by stating that defendant had repeatedly stated the other numbers over the course of a long period of time, an explanation the jury could easily have found difficult to believe.

Trial counsel also established that Blue had a reason to lie in the case, i.e., his apparent romantic interest in Flowers. Blue testified that he heard from Flowers that "someone did a home invasion and robbed her"; in other words, he did not testify that he learned of the home invasion from defendant, but rather that he first learned of the home invasion from Flowers, and only later learned of defendant's involvement. Blue also testified on direct examination that he knew Flowers because they "[g]rew up together," and denied on cross-examination knowing anything about her exotic dancing. However, Flowers testified that she only knew Blue from her work as an exotic dancer, and trial counsel established that Blue, in his letter recounting defendant's alleged confession, had asked Flowers to visit him in federal prison. While Blue denied any romantic interest, the implication from the testimony was clear. The jury could have concluded that Blue had a motive to lie to involve himself further with Flowers or increase his standing with her.

During his closing argument, trial counsel continued to undercut Blue's credibility. He noted Blue's claim that he did not know Flowers as an exotic dancer, despite her testimony that she only knew him from her work. Trial counsel also referenced Officer Lomakoski's testimony that his police report had contained Flowers's social security number and the make and model of

-17-

her gun. Trial counsel posited to the jury that Blue could have obtained the information from the police report and pointed out Blue's inability to remember, even briefly, a set of numbers. Trial counsel also argued that Blue likely was lying so that Flowers would come to visit him in prison.

Although defendant was ultimately convicted, he has not demonstrated that proof that Blue had committed a crime involving dishonesty would have changed the outcome of trial, in light of the significant damage to Blue's credibility done by defense counsel's cross-examination and arguments. The jury had already been provided with several reasons to distrust Blue, including his inability to recall specific numbers, a motive to lie, and that his statements were inconsistent with Flowers's claims about how they knew each other. Therefore, defendant has failed to prove "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

## V. EYEWITNESS IDENTIFICATION

Defendant also argues that the trial court erred by denying his motion to suppress Flowers's identification of defendant, both from the pretrial photographic lineup and during trial, because of an unduly suggestive photographic lineup. Alternatively, defendant posits that his trial counsel was ineffective for failing to obtain an expert witness in the field of eyewitness identification and permitting the jury to look at defendant's hand after the prosecution's close of proofs. Further, in his Standard 4 brief,[6] defendant argues that identification from the photographic lineup was inadmissible because it was not a corporeal lineup and he was not represented by counsel, or that his trial counsel was ineffective for failing to raise the arguments in defendant's Standard 4 brief when moving to suppress the identification. We disagree in all respects.

"In order to preserve the issue of the improper admission of evidence for appeal, a party generally must object at the time of admission." *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). Defendant, moved the trial court to suppress evidence of Flowers's identification of defendant, both via the photographic lineup and any future in-court identification, arguing that the photographic lineup was unduly suggestive and that there was no independent basis for an in-court identification. Therefore, these arguments are preserved. *Id*. However, defendant's argument that there should have been a corporeal lineup where he was represented by counsel is not preserved. See *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004)(noting that "[a]n objection based on one ground is usually considered insufficient to preserve an appellate attack based on a different ground").

For the preserved arguments, "[a] trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *Blevins*, 314 Mich App at 348. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. at 348-349. We review his unpreserved arguments for plain error affecting defendant's substantial rights. *Roscoe*, 303 Mich App at 648.

---

[6] A supplemental appellate brief filed by a criminal defendant *in propria persona* under Michigan Supreme Court Administrative Order 2004-6, Standard 4.

-18-

"A defendant's right to due process is implicated if an in-court identification was preceded by a suggestive out-of-court identification." *People v Posey*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 345491 and 351834); slip op at 3, citing *Neil v Biggers*, 409 US 188, 196-198; 93 S Ct 375; 34 L Ed 2d 401 (1972). "If the trial court finds that the pretrial procedure was impermissibly suggestive, testimony concerning that identification is inadmissible at trial." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). To successfully challenge a pretrial identification, "[t]he defendant must show that in light of the totality of the circumstances, the procedure used was so impermissibly suggestive as to have led to a substantial likelihood of misidentification." *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998). Nevertheless, even when the defendant meets that burden, "in-court identification by the same witness still may be allowed if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303.

We conclude that the trial court did not clearly err by determining that the pretrial photographic lineup in this case was not unduly suggestive. We have reviewed the photographs used in the lineup procedure and agree with the trial court's finding that the photographs did not render the lineup unduly suggestive. All of the men in the photographs shared some physical characteristics with defendant. The photograph of defendant is somewhat blurrier than all of the other photographs, but not to an extent that defendant's features cannot be discerned. The mere fact that defendant's photograph appears blurrier than the others is not dispositive of suggestiveness. See *Kurylczykz*, 443 Mich at 304-305 (stating that "differences in the composition of the photographs," does not "render a lineup impermissibly suggestive"). Further, we note that in the video recording of the photographic identification procedure, Flowers set aside defendant's photograph before she had even seen three of the other photographs. Consequently, at the time she first chose defendant's photograph, she was not even aware that it was the blurriest.

Defendant also argues that the photographs in the lineup do not match Flowers's description of Suspect 2 given to police. For this argument, defendant appears to rely on Flowers's description of defendant at the preliminary examination, during which she said that defendant had a short haircut and no facial hair. However, the photographic lineup, which happened on November 13, 2017, occurred before the preliminary examination in this case, which occurred on May 3, 2018. Therefore, the police were not privy to that description when creating the photographic array in this case. The police report in existence at the time provided no information about Suspect 2's hair or facial hair. Moreover, the police's responsibility to create a photographic lineup that is not unduly suggestive requires them to include "some photographs that are fairly representative of the defendant's physical features . . . ." *Kurylczykz*, 443 Mich at 304 (quotation marks and citation omitted). In other words, the police were required to choose photographs of individuals who look like defendant, not photographs of people who fit Flowers's description of the suspect. *Id*.

Defendant also argues that the trial court erred by failing to hold that the lineup procedure was unduly suggestive. We disagree. When it decided those arguments, the trial court reviewed the video of the procedure and a form provided to Flowers containing the following instructions:

- I am going to show you a group of photographs.

- The fact that the photographs are shown to you should not influence your judgment.

- You should neither conclude nor guess that the photographs contain a picture of the person who committed the crime.

- You do not have to identify anyone.

- It is just as important to free innocent persons from suspicion as it is to identify those who are guilty.

- Please keep in mind that hair styles, beards, and moustaches are easily changed.

- Photographs do not always depict the true complexion of a subject., i.e., they may be lighter or darker.

- Please do not discuss the case with other witnesses or indicate in any way to other witnesses whether you have identified someone.

- If you pick a photograph, I will record the number of the picture and folder you selected in the space below. You will be asked to verify that for accuracy.

Flowers signed the document acknowledging that she understood the instructions. Detective Larson then proceeded to the photographic lineup, which was recorded.

We have reviewed the video and agree with the trial court's finding that the process was not unduly suggestive in any way. Detective Larson read Flowers the instructions on the form, Flowers flipped through the photographs, stopped when she got to defendant's photograph and set it aside, finished going through the remaining photographs, and then returned to defendant's photograph. After staring at the photograph for an additional 20 seconds, Flowers said, "This looks like it could be the one, um, that kept taking his mask off." Detective Larson was looking down at other papers during the entire process, and only looked up when Flowers made her identification. Detective Larson then recorded the Flowers's statement in writing.

Defendant argues that the lineup process was unduly suggestive because it occurred about one month after the robbery, and that Flowers's memory had likely faded over time. Defendant however, does not suggest how the length of time between the robbery and the identification rendered the photographic lineup unduly suggestive. *Colon*, 233 Mich App at 304. Further, in *Kurylczyk*, 443 Mich at 307, our Supreme Court noted that "[c]ourts have held that delays as long as eighteen months after a crime do not invalidate an eyewitness identification." Defendant's argument is not persuasive.

Defendant also argues that the photographic lineup was unduly suggestive because Detective Larson did not use a double-blind procedure. In other words, defendant suggests that, because Detective Larson knew that defendant was a suspect, she may have done something to

encourage Flowers to choose defendant's photograph. However, after a thorough review of the video of the procedure, the trial court found that Detective Larson did not do anything that might have caused Flowers to feel that she should pick defendant's photograph. This Court's review of the video does not leave us with a definite and firm conviction that the trial court made a mistake in this finding. *Blevins*, 314 Mich App at 348.[7]

Because the pretrial photographic lineup was not unduly suggestive, the trial court did not clearly err by denying the motion to suppress it. *Id*. at 348. Moreover, because there was no taint from the pretrial identification, defendant has no claim to challenge Flowers's in-court identification of defendant. *Posey*, ___ Mich App at ___; slip op at 3. Therefore, these preserved challenges by defendant lack merit. *Id*.

Defendant's argument that the photographic lineup was impermissible and inadmissible because it was not a corporeal lineup and because his counsel was not present during the process is similarly unpersuasive. Relying on overruled caselaw from our Supreme Court, *People v Anderson*, 389 Mich 155; 205 NW2d 461 (1973), overruled by *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004), defendant contends that he was entitled to have a corporeal lineup because he was in custody related to the Brown case, and that his counsel should have been present because counsel had already been appointed in the Brown case. This Court, in *People v Perry*, 317 Mich App 589, 596-598; 895 NW2d 216 (2016), has recently addressed and rejected a nearly identical argument. The same result is compelled here. MCR 7.215(J)(1). Consequently, defendant's arguments in his Standard 4 brief regarding those issues lack merit and do not warrant suppression of the pretrial photographic lineup identification or have any effect on the in-court identification. *Id*.

Defendant, in both his main brief and his Standard 4 brief, argues that his trial counsel was ineffective with regard to Flowers's pretrial identification for a number of reasons. We conclude that defendant has failed to establish that his counsel's conduct was deficient or that any deficiency was outcome determinative. *Vaughn*, 491 Mich at 669, quoting *Strickland*, 466 US at 688, 694. Because we agree that the photographic lineup and procedure were not unduly suggestive, trial counsel was not ineffective for failing to raise the arguments defendant raises on appeal, to the extent counsel did fail to raise these arguments.[8] *Savage*, 327 Mich App at 617 (quotation marks and citation omitted).

Defendant also argues that his trial counsel was ineffective for failing to obtain an expert witness regarding eyewitness identification. The decision whether or not to call a witness is generally a matter of trial strategy, and "[w]e will not substitute our judgment for that of counsel regarding matters of trial strategy, nor will we assess counsel's competence with the benefit of

---

[7] To the extent defendant suggests that *all* photographic lineups must be double-blind, this Court has specifically held otherwise. See *Blevins*, 314 Mich App at 350.

[8] As stated, defendant's trial counsel moved to suppress Flowers's identification, both pretrial and in-court, in a pretrial motion, which was denied. Defense counsel was not ineffective for failing to renew the objection to the identification at trial, considering that the trial court had already ruled on the matter. *Savage*, 327 Mich App at 617.

hindsight." *Blevins*, 314 Mich App at 351. Further, defendant has failed to establish the factual predicate for his claim. *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020). Although defendant names a potential expert witness who, hypothetically, could have been retained by defense counsel, defendant has not shown, via offer of proof or otherwise, that this expert would have testified favorably in this case. *Id.*

Additionally, the mere fact that an expert on eyewitness testimony *could have* been called does not mean that trial counsel's performance was deficient for failing to do so. *Blevins*, 314 Mich App at 351, citing *People v Petri*, 279 Mich App 407, 412-413; 760 NW2d 882 (2008). Trial counsel's decision to rely on cross-examination to challenge a witness's identification has been found to be objectively reasonable. *Id.* In this case, trial counsel raised numerous issues with Flowers's identification, including differences in her prior statements describing defendant, the fact that she had independently located defendant on Facebook after receiving a letter from Blue, her initial hesitancy when viewing the photographic lineup, and the fact that other witnesses described defendant's hair and facial hair differently. This strategy, although ultimately unsuccessful, was not objectively unreasonable. *Id.*

Fourth, and finally, defendant contends that his trial counsel was ineffective for allowing the tattoo on his hand to be shown to the jury after the close of the prosecution's proofs. "[D]ecisions regarding what evidence to present . . . are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *Muhammad*, 326 Mich App at 66 (quotation marks and citation omitted).

Flowers had described a tattoo on the hand of Suspect 2 during her testimony, and testified that it matched a photograph of the tattoo on defendant's hand she had seen on Facebook. Flowers also stated, in response to defense counsel's questioning, that she had a tattoo on her hand in nearly the same spot, agreeing that it was a popular place to have a tattoo. Detective Larson testified that defendant had a tattoo on his hand. The jury, after the close of proofs, submitted a question to the trial court regarding whether it could see a photograph of the tattoo on defendant's hand.

In light of the testimony of Flowers and Detective Larson, trial counsel was aware that the jury already knew, at the time it made its request, that defendant had a tattoo on his hand. Instead of attempting to hide such knowledge from the jury, trial counsel chose a strategy of downplaying the tattoo's uniqueness and eliciting testimony from Flowers that many people have tattoos in that location. Therefore, it was an objectively reasonable trial strategy to allow the jury to see defendant's hand (in lieu of a photograph); defendant did not deny having a tattoo there and testimony established that he had one, and to refuse to show his hand might be considered by jurors to be hiding something. We do not second-guess matters of trial strategy merely because they were unsuccessful. *Muhammad*, 326 Mich App at 66 (quotation marks and citation omitted).

In any event, the record shows that the jury was already well aware defendant had a tattoo on his hand before he showed it to them. Defendant has not demonstrated that refusing to show the jury his tattoo would have been outcome-determinative. *Strickland*, 466 US at 694.

## VI. EVIDENCE FROM THE BROWN CASE

In his Standard 4 brief, defendant argues that evidence from the Brown case should not have been admitted by the trial court in the present case because the prosecution dismissed the charges in the Brown case at a later date. Alternatively, defendant asserts his trial counsel was ineffective for failing to raise these arguments. We disagree. While defendant raised with the trial court a challenge to the admission of evidence from the Brown case on the basis of MRE 404(b) and MRE 403, he did not raise the present arguments. Therefore, this issue is unpreserved and reviewed for plain error. *Kimble*, 470 Mich at 309.

Defendant argues that any evidence from the Brown case should not have been admitted during the trial in the present case, because the prosecution's decision to request, and the trial court's decision to grant, *nolle prosequi* of the crimes charged in the Brown case six days after he was convicted in this case, rendered the evidence retroactively inadmissible in his trial in the present case. We disagree.

To support his argument, defendant cites MCL 769.26, which provides that "[a] prosecuting attorney shall not enter a *nolle prosequi* upon an indictment, or discontinue or abandon the indictment, without stating on the record the reasons for the discontinuance or abandonment and without the leave of the court having jurisdiction to try the offense charged, entered in its minutes." Defendant argues that the MCL 769.26 was violated because the record in the present case does not indicate the reasons provided by the prosecution for entering the *nolle prosequi* in the Brown case. Defendant is incorrect, because the Brown case and the present case were severed before trial. Therefore, the prosecution's rationale for dismissing the charges in the Brown case, and the trial court's reasons for granting the prosecution's request, only needed to be found in the record for that case.

Further, the premise of defendant's argument is not supported by legal authority. Defendant has not cited any caselaw supporting his contention that evidence of acts for which a *nolle prosequi* has been entered is inadmissible in other proceedings. Nor does such an argument comport with the law governing the admission of other-acts evidence. See MRE 404(b). Defendant has failed to prove an error, let alone a plain error. *Carines*, 460 Mich at 763. Nor was his counsel ineffective for failing to advance a meritless argument before the trial court. *Savage*, 327 Mich App at 617.

## VII. AMENDMENT OF THE INFORMATION

In his Standard 4 brief, defendant also argues that the trial court abused its discretion and divested itself of jurisdiction by allowing the prosecution to amend the felony information to add a charge of armed robbery without holding an additional preliminary examination. We disagree.

"This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion to amend an information." *Perry*, 317 Mich App at 594. "The trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id.* "To the extent our analysis involves the interpretation of court rules or questions of subject-matter jurisdiction . . . our review is de novo." *People v Clement*, 254 Mich App 387, 389-390; 657 NW2d 172 (2002).

"A trial court may amend an information at any time before, during, or after a trial, as long as the amendment does not unfairly surprise or prejudice the defendant." *Perry*, 317 Mich App at 594. "The trial court may allow the prosecution to amend the complaint to include a new charge if amendment would not cause 'unacceptable prejudice to the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend.' " *People v Carlton*, 313 Mich App 339, 353; 880 NW2d 803 (2015), quoting *People v Hunt*, 442 Mich 359, 364; 501 NW2d 151 (1993), citing MCR 6.112(H). "A defendant may establish unfair surprise by articulating how additional time to prepare would have benefited the defense." *Perry*, 317 Mich App at 594. "The fact that the new charge might carry a more severe penalty is not a sufficient basis to conclude that [the defendant] would be unacceptably prejudiced." *Carlton*, 313 Mich App at 353. Instead, "the relevant inquiry is whether he would have a fair opportunity to meet the charges against him." *Id*.

Defendant's trial did not begin until January 7, 2019, more than four months after the armed robbery charge was added to the information. This time was sufficient to allow defendant and his counsel to prepare his defense for the new charge. *People v Fortson*, 202 Mich App 13, 15; 507 NW2d 763 (1993) (holding there was no unfair surprise to the defendant when the trial court granted the amendment to add a new charge "an additional four months before [the] defendant was brought to trial").

Additionally, defendant's theory of the case was that he was misidentified and was not involved in any of the crimes committed in Flowers's home that day. Defendant does not explain how this defense required alteration after the addition of the new charge of armed robbery. Before the charge was added, defendant was prepared to defend against allegations that he had broken into Flowers's home, found her inside asleep, held her at gunpoint, committed larceny, and then drove her vehicle away. Considering these circumstances, amendment of the armed robbery charge "did not result in *unfair* surprise, *inadequate* notice, or an *insufficient* opportunity to defend." *Id*. at 17 (quotation marks omitted). Consequently, the trial court did not abuse its discretion by granting the prosecution's motion to amend the information. *Perry*, 317 Mich App at 594-595.

Defendant also argues that he had a statutory right to a preliminary examination on the new charge, which was violated by the trial court's refusal to remand for one. MCL 767.42(1) states that "[a]n information shall not be filed against any person for a felony until such person has had a preliminary examination therefor, as provided by law, before an examining magistrate, unless that person waives his statutory right to an examination." In *People v McGee*, 258 Mich App 683, 693-694; 672 NW2d 191 (2003), this Court considered a defendant's argument that "she was denied her right to a preliminary examination when the trial court granted the prosecutor's motion to amend the information to add the offense of perjury." After determining that the defendant did not suffer unfair surprise or unfair prejudice from the amendment and addition of a new charge, this Court held that the defendant's statutory right to a preliminary examination had not been violated. *Id*. at 695-697. Moreover, considering the lack of surprise or any evidence of prejudice, the panel in *McGee* also reasoned that any violation of the statutory right to a preliminary examination was harmless. *McGee*, 258 Mich App at 697. The same rationale applies in this case, because the amendment to add a charge of armed robbery did not "not cause 'unacceptable prejudice to the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend.' " *Carlton*, 313 Mich App at 353, quoting *Hunt*, 442 Mich at 364, citing MCR 6.112(H).

Therefore, the fact that a preliminary examination was not held on the new charge does not require reversal. *McGee*, 258 Mich App at 697, citing MCL 769.26.

Defendant also argues that the trial court did not have jurisdiction to try him for armed robbery because he was not bound over on that charge. We disagree. Circuit courts have subject-matter jurisdiction over felony criminal cases, in general. *People v Goecke*, 457 Mich 442, 458; 579 NW2d 868 (1998). Further, "[i]n personam jurisdiction is vested in the circuit court upon the filing of a return of the magistrate . . . before whom the defendant had been examined." *Id*. (quotation marks and citations omitted). Our Supreme Court has stated that personal jurisdiction is vested in the circuit court if sufficient facts were adduced at preliminary examination to support a charge, even if that charge is added to the information via amendment. *Hunt*, 442 Mich at 362-364.

It is undisputed that armed robbery a felony. See 750.529(2). Consequently, the trial court had subject-matter jurisdiction in this case. *Id*.; *Goecke*, 457 Mich at 458-459.

With regard to personal jurisdiction, defendant had to be bound over on facts that would support the charge of armed robbery. *Id*.; *Hunt*, 442 Mich at 362-364. This Court has recently restated "[t]he elements necessary to prove armed robbery under MCL 750.529" in *Muhammad*, 326 Mich App at 61 (citation omitted):

> (1) [T]he defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

Pertinently, the armed robbery statute requires the commission or attempted commission of "a larceny of any money or other property . . . ." *Id*. See also *People v Williams*, 491 Mich 164, 183; 814 NW2d 270 (2012) (holding that a defendant "may be guilty of armed robbery even if the larcenous taking is not completed.").

The preliminary examination for this case occurred on May 3, 2018. Flowers testified regarding the events that gave rise to the charges in this case. She stated she was home with her children on October 14, 2017, when she was awoken with guns pointed toward her face and her children crying. She reported that the children were screaming and upset, and that three unknown men were in her bedroom. Flowers had not invited those men into her home, and she begged them not to shoot her. They then asked for her money, and she directed them to her safe, which contained about $2,000 in cash and a handgun. Flowers testified that she opened the safe while one of the suspects pointed a gun at the back of her head. Flowers then identified defendant as one of the men in her room, noting that he removed his mask on several occasions to speak. She said that he was one of the men carrying and pointing a gun at her. Defendant and the other two men took clothes, shoes, televisions, jewelry, cash, a handgun, and her vehicle. Flowers was then made to wait in the basement while defendant and the other two men drove away with her belongings. When she came upstairs, her children were still crying and asking to leave.

In light of that testimony, the evidence admitted at the preliminary examination clearly supported a charge of armed robbery. Flowers testified that defendant was "in the course of committing [a] larceny," and "possessed a dangerous weapon . . . ." *Muhammad*, 326 Mich App at 61 (citation omitted). She further testified that defendant, during the course of the larceny, "used force or violence against any person who was present or assaulted or put the person in fear . . . ." *Id*. (citation omitted).

In sum, because sufficient facts were adduced at preliminary examination to support the armed robbery charge, the trial court did not lack personal jurisdiction. *Goecke*, 457 Mich at 458-459; *Hunt*, 442 Mich at 362-364.

## VIII. CUMULATIVE ERROR

Defendant argues that even if we conclude that none of the errors cited above created prejudice and required reversal, the cumulative effect of the errors did. We disagree. Whether reversal is appropriate because of the cumulative effect of multiple errors is a question of law that we review de novo. See *People v Wiley*, 324 Mich App 130, 165; 919 NW2d 802 (2018) ("Any questions of law are to be reviewed de novo . . . .").

"To warrant reversal based on cumulative error, 'the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial.' " *Schrauben*, 314 Mich App at 193, quoting *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). "In making this determination, only actual errors are aggregated to determine their cumulative effect." *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). In other words, "[a]bsent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *People v Green*, 313 Mich App 526, 537; 884 NW2d 838 (2015) (quotation marks and citation omitted; alteration in original).

As established throughout this opinion, defendant has not identified any actual errors that occurred during the trial. Because of that, "there can be no cumulative effect of errors meriting reversal." *Id*. (quotation marks and citation omitted).

Affirmed.

/s/ Jane E. Markey
/s/ Jane M. Beckering
/s/ Mark T. Boonstra